## APPEALS OF JOHN F. COOK AND BRADFORD C. PATCH.

Docket Nos. 6331, 6332.        Decided September 22, 1926.

1. Commissions earned by a partnership which kept its books of account and made its returns on an accrual basis became income for the years in which earned and were a part of the distributive shares of the partners in those years, regardless of the year in which the commissions were collected.

2. Petitioners, not being on an accrual basis, are not subject to tax on salaries until received.

3. Commissioner's adjustment of inventory approved.

4. The Board has no jurisdiction to determine questions relating to a year for which an overassessment has been found by the Commissioner. *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255.

*Henry H. Bond, Esq.*, for the petitioners.
*John W. Fisher, Esq.*, for the Commissioner.

These appeals are from determinations of income-tax liabilities as follows:

|  | John F. Cook | Bradford C. Patch |
|---|---|---|
| 1919. Deficiency | $3, 532. 91 | $604. 42 |
| 1920. Deficiency | 6, 494. 30 | 1, 177. 69 |
|  | 10, 027. 21 | 1, 782. 11 |
| 1921. Overassessment | 3, 486. 47 | 738. 29 |
| Net deficiency | 6, 540. 74 | 1, 043. 82 |

The questions for determination are whether the Commissioner erred (1) in including certain commissions in income of a partnership of which the taxpayers are members; (2) in his allocation of salaries of the members of the partnership; (3) in adjustment of partnership merchandise inventory for 1919.

### FINDINGS OF FACT.

The petitioners are members of the partnership of Cook, Watkins & Co. of Boston, Mass. Distribution of income of the partnership

was made for the years here involved in the ratio of 75 per cent to John F. Cook and 25 per cent to Bradford C. Patch.

The partnership owned all of the capital stock, with the exception of qualifying shares, of two corporations, the C. W. McMillan Granite Co. and the Cook & Watkins Manufacturing Co. The petitioner Cook was president of the Cook & Watkins Manufacturing Co., and treasurer of the C. W. McMillan Granite Co. The petitioner Patch was president of the C. W. McMillan Granite Co., and vice president and treasurer of the Cook & Watkins Manufacturing Co.

The business of the partnership consisted in part of the securing of orders for granite on a commission basis for the two corporations and in part of the securing and execution of orders on its own account. When shipments were made by the corporations on orders obtained by the partnership they billed the partnership which in turn billed the purchasers in its own name. The partnership was responsible for collection of these accounts. No entry of these orders was made on the books of the partnership until shipment was made, when it charged the purchaser and credited the corporation that had filled the order. The partnership carried on its books inventories of merchandise, notes and accounts receivable and notes and accounts payable.

Some time during 1919 the partnership entered into an agreement with the two corporations whereby it was to receive a commission of 10 per cent on orders it obtained for the corporations. This commission was to be based on orders shipped during the year and was to be paid provided the corporations made a sufficient profit on the orders to enable them to pay at that rate. This agreement was in effect during the years 1919 and 1920, and in each of these years the profits to the corporations on orders secured by the partnership were sufficient to entitle the partnership to the agreed 10 per cent commission.

The entries in the journals of the corporations showing commissions for 1919 and 1920 were as follows:

JOURNAL OF COOK & WATKINS MANUFACTURING CO.

December 31, 1919

| Sundries | | Sundries |
|---|---|---|
| $12,407.31 | Commissions, Cook, Watkins & Co._____ 10% on orders shipped 1919 as follows: (Shipments by month listed in journal.) | $12,407.31 |

December 31, 1920

| $11,599.27 | Commissions, Cook, Watkins & Co_____ 10% on orders shipped 1920 as follows: (Shipments by month listed in journal.) | $11,599.27 |

JOURNAL OF C. W. McMILLAN GRANITE CO.

December 31, 1919

| Sundries | | Sundries |
|---|---|---|
| $10, 104. 63 | Commission to Cook, Watkins Co._____ | $10, 104. 63 |
| | (Commissions by months listed in journal.) | |

December 31, 1920

| | | |
|---|---|---|
| $14, 281. 11 | Commission to Cook, Watkins Co._____ | $14, 281. 11 |
| | (Commissions by months listed in journal.) | |

The corresponding entries in the journal of the partnership of Cook, Watkins & Co., were as follows:

December 31, 1919

| Mfg. Ledger | | Customers Ledger |
|---|---|---|
| $10, 104. 63 | C. W. McMillan Granite Co., commission_____ | $22, 511. 94 |
| 12, 407. 31 | Cook, Watkins & Co. | |

January 18, 1921

| | | |
|---|---|---|
| $11, 599. 27 | Cook & Watkins Mfg. Co., commission_____ | $25, 880. 38 |
| 14, 281. 11 | C. W. McMillan Granite Co. | |

The ledger of the partnership at the close of 1919 contained the following entries:

December 31, 1919

| | Debits | Credits |
|---|---|---|
| Commissions, salesman_____ | $5, 881. 55 | $22, 511. 94 |
| | C. & W. & McM. | |
| Credit balance_____ | $16, 630. 39 | |

At the close of the year 1919 the corporations were financially able to pay the commissions on shipments during the year but they did not actually pay them until some time later. At the close of the year 1920 they did not have on hand available cash with which to pay the partnership the commissions on shipments during that year. Payments for the latter year were made as follows:

| Corporation | Date paid | Amount |
|---|---|---|
| C. W. McMillan Granite Co.:<br>  Commissions on 1920 shipments_____ | Feb.  18, 1921 | $14, 281. 11 |
| Cook & Watkins Mfg. Co.:<br>  Commissions on 1920 shipments_____ | Feb  18, 1921 | 11, 599. 27 |

The corporations borrowed money from a bank and from the partnership. The partnership kept a running account on its books with each of the corporations. The balance of these accounts at the close of each year stood as follows:

1919

| | | |
|---|---|---|
| C. W. McMillan Granite Co., debit balance_____ | | $19, 846. 01 |
| Cook & Watkins Mfg. Co., debit balance_____ | | 8, 536. 25 |

1920

| | |
|---|---|
| C. W. McMillan Granite Co., debit balance | $8,928.51 |
| Cook & Watkins Mfg. Co., credit balance | 13,673.65 |

The McMillan Company balance for 1920 included commissions for that year. The partnership charged no interest on funds advanced to the corporations.

The petitioners were paid salaries by the McMillan Granite Co. and by the Cook & Watkins Manufacturing Co. for 1920. Payments of salaries were received by the petitioners as follows:

JOHN F. COOK

| Salary for year— | Amount | Date Paid | Corporation |
|---|---|---|---|
| 1920 | $2,250.00 | Feb. 18, 1921 | C. W. McMillan Granite Co. |
| 1920 | 6,063.75 | Feb. 18, 1921 | Cook & Watkins Mfg. Co. |

BRADFORD C. PATCH

| | Amount | Date Paid | Corporation |
|---|---|---|---|
| 1920 | $750.00 | Feb. 18, 1921 | C. W. McMillan Granite Co. |
| 1920 | 2,021.25 | Feb. 18, 1921 | Cook & Watkins Mfg. Co. |

The entries with respect to salaries on the journals of the corporations were:

C. W. McMILLAN GRANITE CO.

December 31, 1919

Expense
$2,000.00   Expense to sundries:                                    Sundries
                Salary, B. C. Patch _____ $500.00
                Salary, J. F. Cook _____ 1,500.00

January 19, 1920

Sundries                                                           Sundries
$1,500.00   John F. Cook to Cook, Watkins & Co _____ $2,000.00
   500.00   B. C. Patch (salaries).

December 31, 1920

Expense
$3,000   Expense to sundries:                                      Sundries
                Salary B. C. Patch _____ $750.00
                Salary J. F. Cook _____ 2,250.00

COOK & WATKINS MANUFACTURING CO.

December 31, 1919

Expense                                                            Sundries
$8,085.00   Expense, J. F. Cook _____ $6,063.75
                Salaries, B. C. Patch _____ 2,021.25

January 16, 1920

Sundries                                                           Sundries
$6,063.75   J. F. Cook—Cook, Watkins & Co _____ $8,085.00
   2,021.25   B. C. Patch, salaries.

December 31, 1920

| Expense | | Sundries |
|---|---|---|
| $8,085.00 | Expense, J. F. Cook_____ | $6,063.75 |
| | Salaries, B. C. Patch_____ | 2,021.25 |

The petitioners kept no individual books of account. The salaries they received from the corporations were carried in their personal accounts on the partnership books. These salaries were shown in the partnership journal by the following entries:

January 19, 1920

| $2,000.00 | C. W. McMillan Granite Co. (Sal.): | |
|---|---|---|
| | B. C. Patch, McM. Sal_____ | $500.00 |
| | J. F. Cook, McM. Sal_____ | 1,500.00 |
| 8,085.00 | Cook & Watkins Mfg. Co. (Sal.): | |
| | B. C. Patch, McM. Sal_____ | 2,021.25 |
| | J. F. Cook, McM. Sal_____ | 6,063.75 |

February 18, 1921

| $3,000.00 | C. W. McMillan Granite Co.: | |
|---|---|---|
| | J. F. Cook, salary, 1920_____ | $2,250.00 |
| | B. C. Patch, salary, 1920_____ | 750.00 |

February 18, 1921

| $8,085.00 | Cook & Watkins Mfg. Co.: | |
|---|---|---|
| | J. F. Cook, salary 1920_____ | $6,063.75 |
| | B. C. Patch, salary 1920_____ | 2,021.25 |

The salaries received by the petitioners were turned over by them to the partnership as loans.

The merchandise inventory of the partnership contained, at the beginning of 1919, an item of $5,440.11, representing salesmen's commissions on orders unfilled at the beginning of the year. The carrying of this item in the inventory of merchandise was in accordance with the practice of the partnership in prior years. The Commissioner excluded this amount from the opening inventory.

### OPINION.

ARUNDELL: In asserting the deficiencies here involved the Commissioner takes the position that the books of the partnership were kept on an accrual basis and that commissions on orders shipped by the corporations in 1919 and 1920 were accruable items of income for those years. If the Commissioner's contention is correct the distributive share of each of the petitioners should be increased to reflect this income of the partnership. The petitioners say that the partnership books were not kept on a strictly accrual basis; that under the agreement with the corporations commissions on orders did not become income to the partnership until actually received.

The partnership carried on its books a number of accrued items such as notes and accounts receivable, merchandise inventory, and notes and accounts payable. From these facts it is obvious that the partnership books were kept on an accrual basis. The fact that it did not accrue certain items, such as interest receivable, and prepaid insurance, and did not split the payroll for the last week in the year, is not sufficient to place the partnership on a non-accrual basis where it is plain that the accrual system was used generally in keeping its accounts. *Appeal of Bartles-Scott Oil Co.*, 2 B. T. A. 16.

There is some doubt as to whether the agreement between the corporation and the partnership was reduced to writing. From the testimony and the bookkeeping entries made by the parties to the agreement it appears that the substance of it was that the partnership was to receive a 10 per cent commission on all orders secured for the corporation, provided the profits on these orders were in excess of 10 per cent, the commissions to be computed at the end of each calendar year on the orders shipped during the year. During the years here involved the profits to the corporations were sufficient to entitle the partnership to the commissions agreed upon and at the close of each year the corporations on their books credited the partnership with an amount representing 10 per cent of the selling price of shipments made during the year. The corporations at the close of 1919 were in a position, financially, to pay the partnership the commissions on shipments during that year, though payment was not actually made until sometime later. At the close of 1920 they did not have sufficient cash to pay the commissions due to the partnership for the year's shipments. At the close of 1919 the partnership entered on its books the commissions on shipments for that year. For the year 1920 the partnership did not record the commissions as due until in January of the following year.

Having found, as we have above, that the partnership books were kept on the accrual basis, it seems of little importance whether or not the commissions were entered in the partnership accounts at the close of each year. The principal question is whether the commissions were accruable items at the end of each of the years. The partnership was entitled to commissions on orders shipped during each year. When at the end of each year the amount of the orders shipped was determined, the commissions due on the shipments became liabilities of the corporations and accruable assets of the partnership regardless of the time of payment.

The situation in this case in all material respects is similar to that in the *Appeal of Clarence Schock*, 1 B. T. A. 528. In that case we said:

\* \* \* Under such [the accrual] system of accounting *receipt* of income—actual or constructive—is not essential to constitute it income within the

statutory definition of income. Under an accrual system of accounting one *accrues* income, if he does not *receive* it. * * * Having adopted a method of accounting and having regularly employed that method in keeping his books, a taxpayer is compelled by law to report income in accordance therewith. * * * The amount of these items is definite and liquidated. The liability of the obligor is fixed and determined and is in nowise in dispute. The only element left to contingencies is the date when payment may be made. That element exists in a major portion of properly accruable items of income—open accounts, demand notes, and a number of similar accruable items occurring in everyday business.

The salaries of the petitioners as officers of the corporations were carried in the personal accounts of the petitioners in the partnership books. The Commissioner contends that these salaries were items of partnership income rather than income to the individual members and that salaries should be accrued as of the years in which they were earned.

The only thing in the record which might tend to support the position of the Commissioner is that the salaries of the individuals were entered in the partnership books. On the other hand, we find that the salary accounts were carried on the books of the corporations in the names of the individuals and were paid by check directly to the petitioners, who, after indorsing the checks loaned their salaries to the partnership, and had the amounts thereof placed on the partnership books, not as partnership income, but in their personal accounts. The petitioners kept no individual books and we do not believe it can be said that they operated on an accrual basis merely because they had personal accounts on the books of the partnership which were kept on that basis. We are accordingly of the opinion that the petitioners were correct in reporting salaries from the corporations as income in the years in which such salaries were actually received and that the Commissioner erred in including the salaries in income before the dates of actual receipt.

It is apparent that the item of $5,440.11, representing salesmen's commissions, and carried in the partnership merchandise inventory at the beginning of 1919, is not a proper item to be included in an inventory of merchandise. The action of the Commissioner in reducing the opening inventory by this amount must accordingly be approved. The evidence does not show when liability for payment of these commissions accrued, nor does it show when they were paid. Consequently, we are unable to find that the partnership is entitled to a deduction on account of this item in any of the years involved.

A considerable amount of evidence was offered with respect to the year 1921. It appears that no deficiency has been found in these cases for the year 1921, but on the contrary the Commissioner has found an overassessment. While no question was raised by the

parties as to the jurisdiction of the Board to hear and determine the questions raised with respect to 1921, it is evident that, under section 274 (g) of the Revenue Act of 1926, we have no jurisdiction over the appeals for that year. The petitions, in so far as they relate to 1921, are accordingly dismissed. *Appeal of Cornelius Cotton Mills,* 4 B. T. A. 255.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*